United States District Court
Southern District of Texas
**ENTERED**
September 22, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| CHRIS WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:19-cv-00066 |
| | § | |
| ALLSTATE VEHICLE AND PROPERTY | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Plaintiff Chris White's dwelling and other structures on his property were damaged during Hurricane Harvey in August 2017. White filed a claim under a homeowner's insurance policy he had purchased from Defendant Allstate Vehicle and Property Insurance Company ("Allstate"). After Allstate issued its estimate of covered damages and paid White that amount less the deductible and depreciation, White filed suit in Texas state court. Allstate removed the case to this Court, and White demanded an appraisal of the damage under the policy. The appraisal concluded the covered damages were greater than the amount Allstate initially estimated. A few days after the appraisers published the appraisal award, Allstate paid White this greater amount less the deductible and the amount it had already paid based on the initial estimate. Allstate also paid any interest White could have claimed under Texas law. White nevertheless claims Allstate is liable to him for: (1) breach of contract; (2) bad faith; and (3) violating

the Texas Prompt Payment of Claims Act[1] ("TPPCA").   Allstate filed a Motion for

Summary Judgment ("Motion") in which it argues that, because it paid to White the full

appraisal amount and any interest he could have claimed under Texas law, White is not

entitled to additional relief and, therefore, summary judgment should be granted.   White

disagrees and filed a Response setting forth his reasons why the Motion should be denied.

For the following reasons, the Motion is **GRANTED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On or around August 25, 2017, White's dwelling and other structures on his

property in Victoria, Texas, sustained damage Hurricane Harvey.   (Dkt. No. 1-6 at 8);

(Dkt. No. 16-1 at 7, 42–43, 49); (Dkt. No. 17-1 at 2).   At the time his property suffered

damage, White maintained an active House & Home Policy ("Policy") he had purchased

from Allstate.   The Policy insured the dwelling in Victoria up to $407,875 in covered

damages and contained a $12,236 deductible.   (Dkt. No. 16-1 at 33, 91–92).   Notably, the

Policy contained a provision describing the appraisal process, the relevant parts of which

are:

> If [White] and [Allstate] fail to agree on the amount of
> loss, either party may make written demand for an appraisal.
> Upon such demand, each party shall select a competent and
> impartial appraiser and notify the other of the appraiser's
> identity within 20 days after the demand is received. . . .
>
> The appraisers shall then determine the amount of the
> loss, stating separately the actual cash value and the amount
> of loss to each item.[2]  *If the appraisers submit a written report of*

---

[1]   Tex. Ins. Code § 542.051 *et seq.*

[2]   "Replacement cost value is typically defined as the cost to replace lost or damaged
property with materials of like kind and quality . . . .   Actual cash value valuation pays the 'actual
(continue)

> an agreement to [White] and [Allstate], the amount agreed upon
> shall be the amount of the loss. . . .  A written award agreed upon by
> any two will determine the amount of the loss. . . .
>
>      If the appraisal process is initiated, *the appraisal award
> shall be binding* on [White] and [Allstate] concerning the
> amount of the loss.

(Dkt. No. 16-1 at 104–05) (emphases and footnote added).

On August 30, 2017, Allstate received White's claim under the Policy.  (*Id.* at 7, 49);
(Dkt. No. 17-1 at 2).  On September 2, 2017, Allstate sent notice to White that it had
received his claim.  (Dkt. No. 16-1 at 293).

Allstate's adjuster inspected the damage to White's property on September 4, 2017,
and six days later issued an estimate stating that the property had sustained $4,217.94 in
covered damage.  (*Id.* at 7, 13); (Dkt. No. 17-1 at 2, 10).  Allstate sent a second adjuster to
conduct a supplemental inspection of the property on September 23, 2017.  (Dkt. No. 16-
1 at 7, 21–24).  The second adjuster "prepared [an estimate], and a copy was provided and
explained onsite."[3]  (*Id.* at 24).  Allstate sent a third adjuster to White's property to conduct
a final inspection.  (*Id.* at 49).  In this estimate, the third adjuster concluded there were
damages totaling $17,793.79 in replacement cost value to White's property, which
accounted for $14,726.50 in damage to the dwelling, $2,567.29 in damage to other
structures on the property, and $500 in damage to personal property.  (*Id.* at 60–62).  After

---

cash value' of the loss, subject to the policy's limits.  'Actual cash value' has been construed to
mean the cost to replace with materials of like kind and quality, less depreciation.  Depreciation
is the primary difference between replacement cost value and actual cash value."  1 New
Appleman Sports & Entertainment Insurance Law § 14.42 (2020) (citations omitted).

      [3]      Neither party states whether the second adjuster's estimate differed from the first.

deducting depreciation and the $12,236 deductible, Allstate paid White $1,472.67 on November 24, 2018.  (*Id.* at 142).

On June 6, 2019, White filed this lawsuit against Allstate in Texas state court in Victoria County.  (Dkt. No. 1-6 at 7).  In his Original Petition ("Petition"), White alleges Allstate is liable for: (1) breach of contract; (2) bad faith; and (3) violating the TPPCA.  (*Id.* at 9–11).  Allstate removed the case to this Court on July 19, 2019, based on diversity jurisdiction under 28 U.S.C. § 1332.[4]  (Dkt. No. 1).

On September 11, 2019, White invoked the appraisal provision in the Policy.  (Dkt. No. 16-1 at 77).  On October 1, 2019, Allstate declined White's request for appraisal, asserting White "waived his right to appraisal" due to "his unreasonable delay in invoking" it.  (Dkt. No. 10-3 at 2).  White then filed a Motion to Compel Appraisal and Abate Pending Appraisal on October 14, 2019, which Allstate opposed.  (Dkt. No. 10); (Dkt. No. 11).  On November 4, 2019, Judge Kenneth Hoyt granted White's Motion and ordered "this case is abated until the parties notify the Court in writing that the parties have completed the appraisal process."  (Dkt. No. 14).  Both parties agree appraisal was completed, and the case was subsequently reopened.  (Dkt. No. 16 at ¶¶ 8–9); (Dkt. No. 17 at 3); (Dkt. No. 15 at 1); (Dkt. No. 20).

---

[4]  White "seeks monetary relief over $100,000 but not more than $200,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees."  (Dkt. No. 1-6 at 8, ¶ 4).  At the time he commenced the lawsuit, White was domiciled in Victoria County, Texas.  (*Id.* at 7, ¶ 1).

Allstate, on the other hand, "is a corporation incorporated under the laws of the State of Illinois, having its principal place of business now and at the time this action was commenced at Northbrook, Cook County, in the State of Illinois."  (Dkt. No. 1 at ¶ 8).  Therefore, for purposes of diversity jurisdiction, White is a citizen of Texas and Allstate is a citizen of Illinois.

The appraisers agreed that the amount of damage to White's property was greater than the estimate Allstate's third adjuster had tabulated on November 23, 2018. (Dkt. No. 16-1 at 82). Specifically, the appraisers concluded there were damages totaling $22,130.46 in replacement cost value to White's property. (*Id*.). On January 27, 2020, just three days after the appraisers submitted the appraisal award, Allstate issued White a check in the amount of $8,421.79. (*Id.* at 74, 85). This amount accounted for the $22,130.46 appraisal award minus the $12,236 deductible and the amounts Allstate had previously paid to White under the claim. (*Id.* at 74). On that same date, Allstate also issued White a separate check for $3,605.66 "to cover any additional interest [White] could possibly allege to be owed." (*Id.* at 74, 84). The checks were delivered to White's counsel on January 28, 2020. (*Id.* at 7–8, 72).

On March 5, 2020, Allstate moved for summary judgment on all of White's claims. (Dkt. No. 16). In essence, Allstate asserts that it is undisputed it paid White the entire amount to which he is entitled under the Policy as well as any interest to which he could be entitled under Texas law. Allstate argues White is entitled to no additional relief as a matter of law and the Court therefore should grant its Motion.

White responds by arguing that Allstate is not entitled to summary judgment on any of the claims raised in the Petition. (Dkt. No. 17). Allstate filed a Reply on March 30, 2020. (Dkt. No. 18). On August 25, 2020, this Court held a Status Conference and requested supplemental briefing from the parties on recent court decisions. Allstate and White filed their Supplemental Briefs on August 27, 2020, and September 3, 2020, respectively. (Dkt. No. 29); (Dkt. No. 30).

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (quotation omitted). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citation omitted). That is, "the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (quotation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (quotation omitted). The

nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

In reviewing a motion for summary judgment, the district court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). This means that factual controversies are to be resolved in the nonmovant's favor, "but only. . . when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. The Court is not obligated to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992).

## III.   DISCUSSION

In his Petition, White claims Allstate is liable for breach of contract, bad faith, and violating the TPPCA. (Dkt. No. 1-6 at 9–10, ¶¶ 14–21). Allstate asserts it is entitled to summary judgment on each of these claims. (Dkt. No. 16). The Court agrees with Allstate.

### A.   BREACH OF CONTRACT CLAIM

White alleges that Allstate breached their contract by wrongfully denying or underpaying his insurance claim. Allstate counters that it complied with the express terms of the contract. According to Allstate, the policy provides that an appraisal controls the amount of benefits to be paid, and Allstate paid that amount to White. The Court

agrees and finds that Allstate is entitled to summary judgment on White's breach of contract claim.

The Supreme Court of Texas held that when an appraisal clause states that an appraisal shall determine the amount of loss under an insurance policy, "the insurer's payment of the [appraisal] award bars the insured's breach of contract claim premised on failure to pay the amount of the covered loss." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 129 (Tex. 2019); *see also Randel v. Travelers Lloyds of Texas Ins. Co.*, 9 F.4th 264, 267 (5th Cir. 2021) ("Although the issuance of an appraisal award does not bar a breach of contract claim, payment and acceptance of the award does." (citation omitted)).

In this case, White's Policy contains an appraisal clause similar to the appraisal provision analyzed in *Ortiz*.[5]  White's Policy stipulates that an appraisal made by the party-appointed appraisers controls the amount that White is entitled to recover under the Policy and is binding on the Parties.  (Dkt. No. 16-1 at 104–05).  And the undisputed evidence shows that the Parties followed this provision.  White invoked the appraisal provision in the Policy.  (*Id.* at 77).  White and Allstate appointed appraisers who

---

[5]    The relevant portion of the appraisal provision in *Ortiz* provided:

> If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal.  If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. . . . The two appraisers shall then select a competent, impartial umpire. . . . The appraisers shall then set the amount of the loss.  If the appraisers submit a written report of an agreement to [State Farm], the amount agreed upon shall be the amount of the loss. . . .  Written agreement signed by any two of these three shall set the amount of the loss.

589 S.W.3d at 130.

conducted the appraisal.[6]  (*Id.* at 77, 79).  The appraisers ultimately agreed to an amount. (*Id.* at 82).  Three days later, Allstate issued a check to White for this new amount less the deductible and the amount Allstate already paid to White under the claim.  (*Id.* at 7–8, 72, 74, 85).

The plain language of the Policy states—and the parties do not dispute—that the amount agreed upon by the appraisers is the amount to which White is entitled under the Policy and is binding.  (Dkt. No 16-1 at 104–05).  Because neither party contests that Allstate paid White the amount agreed upon by both appraisers shortly after the appraisal process concluded, White's breach of contract claim is barred as a matter of law. *See Ortiz*, 589 S.W.3d at 129; *see also Trujillo*, 2020 WL 6123131, at *3.  Accordingly, Allstate is entitled to summary judgment on this claim.

## B.   Bad Faith Claim

White next alleges that Allstate violated various provisions of the Texas Insurance Code by committing several acts in bad faith.  (Dkt. No. 1-6 at 9–10, ¶¶ 17–21). Specifically, White alleges Allstate violated Sections 541.051, 541.060, and 541.061 of the Code by: (1) making misrepresentations about the Policy; (2) failing to fairly and promptly settle White's claim and reasonably explain its decision to White; and (3) making other untrue statements concerning matters of material law and fact.  (*Id.* at ¶¶ 18–20).

---

[6]      The Court ordered the Parties to conduct an appraisal of the damage to White's property. (Dkt. No. 14).  Although Allstate initially opposed appraisal, (Dkt. No. 10-3 at 2), it is undisputed that it ultimately followed the Court's Order.

Allstate counters that it is entitled to summary judgment on White's bad faith claim because the payment to White bars recovery of extra-contractual claims. (Dkt. No. 16 at ¶ 15). White disagrees, contending that, "while payment of the appraisal amount might relieve Allstate of Plaintiff's cause of action for breach of contract, it does not mean that Allstate fairly and properly handled [White]'s insurance claim from the outset." (Dkt. No. 17 at 6) (footnote omitted). The Court agrees with Allstate.

The Supreme Court of Texas has analyzed bad faith claims made in conjunction with breach of contract claims against an insurance company for the company's handling of a claim. *See Ortiz*, 589 S.W.3d at 133–35. "The Texas Insurance Code authorizes a private action against an insurer that commits an unfair or deceptive act or practice in the business of insurance." *Id.* at 133 (internal quotations omitted). An insured's "claims that the insurer violated its extra-contractual common-law and statutory duties" are "distinct and independent" from a "claim for breach of an insurance contract . . . ." *Id.* at 133–34 (internal quotations omitted). Although a finding that an insurer is liable for breach of contract "is not a prerequisite to recovery for a statutory violation that caused the insured's damages, the general rule is that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy." *Id.* at 134 (internal quotations omitted).

The Supreme Court of Texas's decision in *Ortiz* teaches there are two theories under which an insured can recover on bad faith claims under the Texas Insurance Code. First, an insured can establish he sustained actual damages by not receiving benefits under an insurance policy to which he is entitled and that such damages were caused by

the insurer's statutory violation. *Id.* Second, an insured may recover on his bad faith claim, even if he is not entitled to benefits under the insurance policy, if he can show he sustained "damages for a statutory violation that cause[d] an injury independent from the loss of the benefits." *Id.* (internal quotations omitted).

Two aspects of the second theory of recovery are noteworthy. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499–500 (Tex. 2018). "The first is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id.* at 499 (citation omitted). Importantly, the insured may recover "only if the damages are truly independent of the insured's right to receive policy benefits." *Id.* at 499–500. That is, the second theory of recovery "does not apply if the insured's statutory or extra-contractual claims are predicated on the loss being covered under the insurance policy . . . or if the damages flow or stem from the denial of the claim for policy benefits . . . ." *Id.* at 500 (cleaned up). Thus, "[w]hen an insured seeks to recover damages that are predicated on, flow from, or stem from policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits." *Id.* (internal quotations omitted).

"The second aspect of the independent-injury [theory] is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* (emphasis in the original). Thus, "an insured who prevails on a statutory claim cannot recover punitive damages for bad-faith conduct in the absence of independent actual

damages arising from that conduct." *Id.* The Supreme Court of Texas, however, has implied that recovering on a bad faith claim based on an independent injury theory of liability is extremely difficult, noting that a "successful independent-injury claim [is] rare," such that the court has yet to encounter one. *Id.*

Turning to the present case, the Court concludes that White cannot recover on his bad faith claim under either theory. With respect to the first theory of recovery—that White sustained actual damages by not receiving benefits under the Policy to which he is entitled—White offers nothing to rebut Allstate's evidence showing that it paid White the full amount of the appraisal award. Under the plain language of the policy, the appraisal award constitutes the entirety to which White is entitled. Thus, there is no genuine issue of material fact as to whether White received the full amount of the benefits. Moreover, while White also predicates his bad faith claim on attorney's fees and treble damages, (Dkt. No. 1-6 at 10, ¶ 21), these fees and damages do not constitute *actual damages* under the Policy. *See Ortiz,* 589 S.W.3d at 134–35 (noting that Section 541.152(a) clearly states that "any award of attorney's fees or treble damages is premised on an award of underlying 'actual damages'" and that "Texas law is clear that attorney's fees and costs incurred in the prosecution or defense of a claim . . . are not damages"). Because it is undisputed that White did not sustain actual damages under the Policy, he cannot rely on the first theory described in *Ortiz* to recover on his bad faith claim. *See id.*

Nor can White succeed under the second theory of recovery for bad faith—sustaining an independent injury. First, the harms White maintains he suffered because of Allstate's alleged bad faith all stem from the dispute over White's proceeds under the

12

Policy. Such benefits are not independent injuries as a matter of law. *See Menchaca*, 545 S.W.3d at 500 ("[A]n injury is not 'independent' from the insured's right to receive policy benefits if the injury 'flows' or 'stems' from the denial of that right."); *see also Trujillo*, 2020 WL 6123131, at *4 ("These alleged harms all stem from [the insured's] right to receive policy benefits and are not independent of that right."); *Reyna v. State Farm Lloyds*, No. H-19-3726, 2020 WL 1187062, at *5 (S.D. Tex. Mar. 12, 2020) (holding that the insurance company was entitled to summary judgment on the insured's bad faith claim because the insured presented no evidence of injury independent of the right to receive policy benefits). Moreover, White fails to proffer summary judgment evidence showing that Allstate's alleged bad faith, including Allstate's alleged misrepresentations and failure to promptly and fairly dispose of White's claim under the Policy, caused him independent injuries. *See Trujillo*, 2020 WL 6123131, at *4 (concluding that the insured's failure to proffer summary judgment evidence of independent injuries entitles the insurer to summary judgment on the insured's bad faith claim); *Reyna*, 2020 WL 1187062, at *5 (same). For these reasons, Allstate is entitled to summary judgment on White's bad faith claim.

### C.   PROMPT PAYMENT OF CLAIMS STATUTE CLAIM

White next alleges that Allstate violated the TPPCA by "fail[ing] . . . to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage . . . ." (Dkt. No. 1-6 at 9, ¶ 15). White further alleges that, because Allstate failed to comply with the TPPCA, he "is entitled to interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code." (*Id.* at ¶ 16).

Allstate asserts, among other reasons, it is entitled to summary judgment on this claim because it already paid the full amount of the benefits to which White was entitled under the Policy as well as all of the interest he could have claimed under the TPPCA. (Dkt. No. 16 at ¶¶ 27–28).  White responds by arguing that Allstate's payment "does not foreclose [his] damage claims because the amount [he] could be owed for Allstate's undervaluation and delay can only be determined by a finder of fact."  (Dkt. No. 17 at 7); *see also* (Dkt. No. 30 at 3–12).  The Court disagrees.

The Supreme Court of Texas has ruled on the requirements the TPPCA imposes on insurers and what an insured must prove to prevail on a TPPCA claim.  *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812–18 (Tex. 2019).  "The TPPCA . . . imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims," which "are enforceable under the TPPCA," including through the imposition of damages.  *Id.* at 812.  "To prevail under a claim for TPPCA damages under section 542.060, the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim."  *Id.* at 813.  "If the insured fails to establish either that the insurer is liable for the claim or that the insurer failed to comply with a provision of the TPPCA, the insured is not entitled to TPPCA damages."  *Id.*  "Thus, the basis for liability for TPPCA damages is that the requisite time has passed and the insurer was ultimately found liable for the claim."  *Id.* (internal quotations omitted).  Relevant to this case is the TPPCA's stipulation that an insurer who fails to properly pay the amount under a claim to the insured shall be liable for TPPCA

14

damages in the form of interest[7] and attorney's fees.  *Id.* at 812; *see also* Tex. Ins. Code § 542.060.  The Court now considers whether Allstate is entitled to summary judgment on White's TPPCA claim by considering his prayer for interest and attorney's fees under the TPPCA.

a.   <u>Interest</u>

The Court first addresses White's prayer for interest under the TPPCA.  Allstate asserts that, even if it violated the TPPCA, it is nevertheless entitled to summary judgment because it is undisputed that Allstate paid to White any interest to which he would have been entitled under the TPPCA.  (Dkt. No. 16 at ¶¶ 27–30).  White disagrees,

---

[7]    Section 542.060, in relevant part, provides:

> (a) Except as provided by Subsection (c), if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees.  Nothing in this subsection prevents the award of prejudgment interest on the amount of the claim, as provided by law. . . .

> (c) In an action to which Chapter 542A applies, if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy, in addition to the amount of the claim, simple interest on the amount of the claim as damages each year at the rate determined on the date of judgment by adding five percent to the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees.  Nothing in this subsection prevents the award of prejudgment interest on the amount of the claim, as provided by law.  Interest awarded under this subsection as damages accrues beginning on the date the claim was required to be paid.

When Section 542.060(c) applies, such as when a plaintiff brings "a force of nature claim" under an insurance policy, "the 18 percent interest will not apply."  Elizabeth Von Kreisler & Suzette E. Selden, *Annual Survey of Texas Insurance Law*, 21 J. Consumer & Com. L. 54, 55 (2018).  "Instead, the insurer will only be liable to the claimant for the amount of the claim and simple interest on the amount of the claim at the rate determined on the date of judgment by adding 5 percent to the interest rate established under Section 304.003, Finance Code . . . ."  *Id.*

arguing that even though Allstate sent him "a check for $3,605.66 to cover any conceivable interest [White] could allege to be owed," this undisputed fact in and of itself "does not foreclose [his] damage claims," (Dkt. No. 17 at 7), because "[p]ayment of interest—like payment of an appraisal award—does not extinguish [White]'s TPPCA claims as a matter of law," (Dkt. No. 30 at 12), and "the amount [White] could be owed for Allstate's undervaluation and delay can only be determined by a finder of fact." (Dkt. No. 17 at 7). The Court agrees with Allstate and finds White's argument unpersuasive.

Regardless of whether an insurer violates the TPPCA, it may nevertheless be entitled to summary judgment on a TPPCA claim if the insurer paid the full amount of interest the insured could claim under the TPPCA. *See Quibodeaux v. Nautilus Ins. Co.*, 655 F. App'x 984, 989 (5th Cir. 2016) (holding that the district court properly granted summary judgment on TPPCA claim when insurer demonstrated its overpayment on the adjuster's estimates "more than compensated [the insured] for the penalty interest that accrued because of [the insurer's] delay"); *see also Trujillo*, 2020 WL 6123131, at *5–6; *Gonzalez v. Allstate Vehicle & Prop. Ins. Co.*, 474 F. Supp. 3d 869, 876 (S.D. Tex. 2020); *cf. Employees Fin. Co. v. Lathram*, 369 S.W.2d 927, 929–30 (Tex. 1963) (stating petitioners could be afforded no additional relief when a non-appealing defendant paid the full amount of the judgment "with all accrued interest and court costs"). By way of example, in two recent cases before district courts in the Fifth Circuit, the insured parties argued that, even though the insurers paid the interest to which they were entitled under the TPPCA, the insurers were not entitled to summary judgment on TPPCA claims. *Trujillo*, 2020 WL 6123131, at *5; *Gonzalez*, 474 F. Supp. 3d at 876. The district courts disagreed in

both cases concluding that, because the undisputed evidence was showed that the insurers paid the full amounts of interest to which they were entitled under the TPPCA, it was appropriate to grant summary judgment on the TPPCA claims. *Trujillo*, 2020 WL 6123131, at *5–6 (granting summary judgment on TPPCA claim, in part, because the insured "offered no summary judgment evidence of, and [made] no argument that she is entitled to, any greater amount of interest under the TPPCA" than that which the insurer paid to her); *Gonzalez*, 474 F. Supp. 3d at 876 (granting summary judgment on the insured's TPPCA claim because "even assuming [the insurer's] pre-appraisal payment to be unreasonable, [the insurer] has already tendered payment of interest to the [insured] at the penalty rate specified in the TPPCA").

Thus, even assuming that Allstate is liable under the TPPCA, it is undisputed that White is not entitled to more interest under the TPPCA beyond that which Allstate already paid to him.  The uncontroverted summary judgment evidence shows that Allstate paid White the full amount of the appraisal award, along with an additional sum of $3,605.66 to cover any interest White could demand under the TPPCA.  (Dkt. 16-1 at 7–8, 72, 74–75, 84).  White offers no summary judgment evidence demonstrating he is entitled to any amount of interest greater than what Allstate has already paid him.  *See* (Dkt. No. 17); (Dkt. No. 17-1).  As a matter of law, then, summary judgment is appropriate on the interest payment.  *See Trujillo*, 2020 WL 6123131, at *5–6 (concluding the insured, "as a matter of law is not entitled to a judgment for damages under the TPPCA," when the insured failed to dispute summary judgment evidence showing the insurer paid to

the insured the full amount of the appraisal award and all statutory interest to which the insured could be entitled).

> b.   Attorney's Fees

White also alleges he is entitled to attorney's fees under the TPPCA.  (Dkt. No. 1-6 at 9, ¶ 16).  Allstate disagrees.  (Dkt. No. 16 at ¶¶ 31–34).  The Court concludes that White is not entitled to attorney's fees as a matter of law.

Generally, "[a] plaintiff who does not recover actual damages cannot recover attorneys' fees under the Insurance Code."  *Guidry v. Env't Procs., Inc.*, 388 S.W.3d 845, 860 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *State Farm Life Ins. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)).  On September 1, 2017, significant changes to the Texas Insurance Code took effect that were "aimed at limiting damages for losses" caused by natural disasters.  Elizabeth Von Kreisler & Suzette E. Selden, *Annual Survey of Texas Insurance Law*, 21 J. Consumer & Com. L. 54, 55 (2018).  "The new provision, Chapter 542A of the Texas Insurance Code, applies to claims regarding commercial and personal property damage or loss caused by 'forces of nature.'"  *Id.*

Section 542A.007(a) of the Texas Insurance Code sets forth the formula for determining the amount of attorney's fees to which an injured party is entitled under a TPPCA claim:

> (a) Except as otherwise provided by this section, the amount of attorney's fees that may be awarded to a claimant in an action to which this chapter applies is *the lesser of*:
>
> (1) the amount of reasonable and necessary attorney's fees supported at trial by sufficient evidence and determined by

the trier of fact to have been incurred by the claimant in bringing the action;

(2) the amount of attorney's fees that may be awarded to the claimant under other applicable law; or

(3) the amount calculated by:

(A) *dividing the amount to be awarded in the judgment to the claimant for the claimant's claim under the insurance policy for damage to or loss of covered property by the amount alleged to be owed on the claim for that damage or loss in a notice given under this chapter*; and

(B) multiplying the amount calculated under Paragraph (A) by the total amount of reasonable and necessary attorney's fees supported at trial by sufficient evidence and determined by the trier of fact to have been incurred by the claimant in bringing the action.

Tex. Ins. Code § 542A.007(a) (emphases added).  Notably, this new provision "substantially limits the attorney's fees a policyholder can recover against its insurer . . . ."  Amy Elizabeth Stewart, *2017 Insurance Law Update*, 83 The Advoc. (Texas) 7, 2 (2018).

For example, in *Trujillo,* a district court in the Fifth Circuit addressed a similar claim for attorney's fees under this new provision.  2020 WL 6123131, at *6.  In *Trujillo,* similar to this case, "[t]he uncontroverted evidence [was that] [the insurer] [had] paid to [the insured] the full amount of policy benefits and interest owed under the TPPCA."  *Id.* As a result, "the amount . . . awarded to [the insured] in a judgment on her TPPCA claim [was] zero dollars, [resulting] in an award of no attorney's fees under § 542A.007(a)(3)." *Id.* Such an outcome "is logical when viewed in conjunction with the apparent purpose of the [TPPCA], which was to curb abusive 'hailstorm' claims." *Pearson v. Allstate Fire &*

*Cas. Ins. Co.*, No. 19-CV-693-BK, 2020 WL 264107, at *4 n.3 (N.D. Tex. Jan. 17, 2020) (internal quotations omitted).

In the present case, the uncontroverted evidence is that Allstate paid White the full amounts of the benefits to which White was entitled under the Policy and the interest he could have demanded under the TPPCA. (Dkt. No. 16-1 at 7–8, 72, 74–75, 84–85). Because White is not entitled to recover damages under the TPPCA as a matter of law, he is not entitled to an award of attorney's fees under Section 542A.007(a)(3).

In sum, it is undisputed that Allstate paid White the full amount of the benefits under the Policy to which he was entitled and all interest he could claim under the TPPCA. As a result, White is not entitled to attorney's fees under Section 542A.007(a)(3).[8]

---

[8]    In a separate Count, White asserts he is entitled to attorney's fees under Sections 38.001–38.003 of the Texas Civil Practice and Remedies Code and "further prays that he be awarded all reasonable attorneys' fees incurred in prosecuting his causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code." (Dkt. No. 1-6 at 11, ¶¶ 23–24). White further states in his Response that Allstate "is liable for the attorney fees [he] has incurred in seeking redress" for Allstate's breach of contract, bad faith, and violation of the TPPCA. (Dkt. No. 17 at 3). To the extent White is claiming he is entitled to attorney's fees for his non-TPPCA claims, the Court is not persuaded for two reasons.

First, "Chapter 542A applies to an action on a claim against an insurer, or an agent, including actions alleging breach of contract, negligence, misrepresentation, or breach of a common law duty or an action brought under certain subchapters of the Chapters 541 and 542 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act." *In re Allstate Indem. Co.*, No. 14-18-00362-CV, 2018 WL 3580644, at *2 (Tex. App.—Houston [14th Dist.] July 26, 2018, no pet.) (emphasis added); *see also* Tex. Ins. Code § 542A.002(a). Thus, the formula set forth in Section 542A.007(a) for calculating attorney's fees is used to determine whether White can recover attorney's fees for prosecuting his breach of contract and Chapter 541 bad faith claims. Because the Court has determined that Allstate is entitled to summary judgment on White's breach of contract and bad faith claims, White cannot recover attorney's fees for these claims as a matter of law. *See Reyna*, 2020 WL 1187062, at *5 ("Because [the insurer] is entitled to summary judgment on all of [the insured's] claims, attorney's fees are not available, as a matter of law. [The insurer] is entitled to summary judgment on [the insured's] attorney's fees claim.").

Second, insofar as White predicates his claim for attorney's fees on Sections 38.001–38.003 of the Texas Civil Practice and Remedies Code, his claim fails as a matter of law. "To recover
(continue)

Because White is unable to recover any damages under his TPPCA claim as a matter of law, Allstate is entitled to summary judgment on this claim.[9]

1. **CONCLUSION**

Based on the foregoing reasons, Allstate's Motion is **GRANTED**.

It is SO ORDERED.

Signed on September 21, 2021.

DREW B. TIPTON
**UNITED STATES DISTRICT JUDGE**

---

attorney's fees under this statute, a party must first prevail on the underlying claim *and* recover damages." *In re Nalle Plastics Fam. Ltd.*, 406 S.W.3d 168, 173 (Tex. 2013) (emphasis in original). Because Allstate is entitled to summary judgment on all of White's underlying claims, White is not entitled to attorney's fees under sections 38.001–38.003 of the Texas Civil Practice and Remedies Code as a matter of law.

    9    In supplemental briefing, White directs this Court to the Supreme Court of Texas's recent decision in *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651 (Tex. 2021).  (Dkt. No. 36).  He asserts that this decision "bears directly on the facts and issues in [his] case, and in particular those issues raised by Defendant . . . in its [pending] motion for summary judgment."  (*Id.* at 2).  Allstate disagrees.  *See* (Dkt. No. 37).

    Specifically, White says the *Hinojos* decision stands for the proposition that "a pre-appraisal payment and subsequent payment of an appraisal award [does not] absolve[] the insurer of statutory liability under the TPPCA."  (Dkt. No. 36 at 2).  Whether that is true or not is of no moment, however, because, even if Allstate violated the TPPCA, it is undisputed that Allstate paid White all the statutory interest to which he would be entitled.  Thus, Allstate is entitled to summary judgment on the TPPCA claim.